Mr. Moriarty? Yes, thank you, Your Honor. I see we have the effect of clearing the house here. Not quite, almost. Almost, that's right. We have three important listeners, so thank you for allowing me to present my case. I represent FLASH SEATS. And the two issues I want to discuss, and I feel we've read several in our brief, is one, the construction of the term personalized fiscal material, in which the district court excluded the preferred embodiment. And then the second one is something that you've actually heard a little bit about today, and you've heard from a lot of litigants, is how you properly apply the means plus function case law to a database as opposed to a computer system. On the first issue that I'm going to allow you to talk about, we see this on occasion where parties come in and they want a broad claim construction, and only to, at the end of the day, invite a validity challenge and lose their hat. So in other words, the classic example of having won the battle but lost the war. If we were to agree with you on the claim construction and construe it as to include the preferred embodiment, isn't it quite clear to you that you're really bumping up against the prior art and just inviting an obviousness challenge or an anticipation challenge? No, well, I mean, if you litigate someone's popular race, that issue, but we are confident we would win that issue. And this issue was, you know... That's what was going on in the prosecution's history, right? And there is, I mean, you may be right or wrong on whether or not there was enough of an express survival in the prosecution's history, but clearly there's prior art that you bumped into. Right, and claims are successfully amended to avoid them. So that is the key issue, that the claims are amended to avoid this Goheen and Geb reference. Now, on the question of anticipation, there's no suggestion by the examiner or anyone that either of these references anticipate the invention. One of the critical things here, which, you know, as you get involved in the litigation, you start focusing on access needs. How do you get access to the stadium? What does Goheen say about it? But the claim is not, the invention isn't to access to a stadium, it's a two-part system. There's an e-commerce function, which is you buy and sell tickets, you put data in, you put your authorization data, you put your credit card number in, and then there's, once you own the ticket and you've engaged in the market... But what the examiner compelled you to do was to add language to the claims, at least, that says, without the buyer presenting any personalized physical material. So isn't it clear that in the absence of that language, you would have bumped up in the prior art, whether it's obviousness or anticipation? What's the problem with the prior art? I think the examiner intended to avoid the prior art by putting that in. I think we would have... Okay, so we have to construe that fairly, and how do we construe that fairly so as to allow you to include the preferred embodiment? Well, for one, for starter, neither Kev or Goheen suggests using a credit card in the manner that our invention does, which is using the data on the credit card... But Goheen suggests using a card, that's right, right? Not for purposes of entry. There is one reference to an e-token on a smart card. You would construe that as of 1998. What does that mean? And one of the things I think that is important, rather than the court engaging in what does Kev and Goheen actually mean, per se, the issue is what did the examiner understand it to mean? How did he manifest his intent in an objective manner with Kev and Goheen? And what is clear from the record is that Kev, which is the primary reference, Goheen is really an airline ticket, it's not a ticketing system, it's for getting an airline reservation system. With Kev... ...did apply to an airline reservation system, why wouldn't the card that's contemplated by Goheen fall within the category of physical... Personalized physical material. Personalized physical material. So, one point, the examiner, if he wanted to exclude the presentation of all physical material, would not have said personalized. Okay, but I understand. So, why isn't the card in Goheen personalized physical material? It is. And what it is, and that's what the examiner was saying, is I want to avoid Kev and I want to avoid Goheen. So, Kev talks about redistributing paper tickets. So, what's the distinction between a credit card and the smart card or whatever it is in Goheen? The smart card is not in Goheen. The smart card, there's a one sentence reference in Kev and it doesn't say smart card, it says an e-token on a smart card. An e-token is something physical that has to be distributed. I understand your argument. What you want to do is ask us to read into personalized physical material the additional phrase issued by the venue, correct? No. Or issued by the seller. No. It could be in such a manner, but we're not asking that as a requirement. We're saying that... Isn't that how you distinguish yourself from Kev and Goheen? Kev and Goheen both require distribution of something. Right, the seller has to issue something. Right, the seller has to issue, but there might be a secondary market here that buyer and seller may be several layers removed from the original ticket issuer. If this was sort of a StubHub scenario, which is different than our patent, the ultimate buyer is delivered a ticket, a paper ticket, because that meets his individual requirements. I bought seat X in section 4. So that's the argument you make, as I understand in your brief, is that it has to be delivered by the seller as opposed to a credit card that they get from some third party. Right, no. By the buyer. By the buyer. So the buyer, and that's exactly the point. Kev and Goheen require the seller in this transaction, the secondary market, to deliver something to the buyer. Right, that's exactly what I just said. I'm agreeing. Deliver it, but you're saying it has to come from the seller, the personalized physical material. It has to be delivered from someone. In the Kev system... I don't understand what you're saying. You're distinguishing it from the credit card. What is the difference? What is the limiting principle, the credit card difference? Credit cards are not physical material bearing or containing information, and the other stuff is. The limiting principle is that the buyer already has his credit card. He or she enters the data from the credit card into the system. How do you read that personalized physical material? It's depending on whether the buyer already has the card or whether it's issued by itself. How does that phrase capture that distinction? Well, if you look at the entire phrase, there's an entire where-in phrase at the end of the patent. That says, you engage in the e-commerce function. It says, where-in, the ticket holder submits authentication data to allow access, but is not allowed access if they're submitting personalized physical material. Personalized means individualized or customized for the needs of the person. It is a verb that was... But how is it distinguishing between a card that's issued by a seller and a card which the buyer has? Because individualized means it was prepared by someone. It doesn't have to be by the seller. It could have been by the person the seller bought it from, but it is specific to the needs of the ticket buyer. A credit card... We're talking in the abstract. Is there anything in the specification other than the preferred embodiment? Where are you... Judge Dyson, how are we supposed to limit it to certain personalized information and exclude others? The key principle in the patent talks about this. There's no distribution of the ticket going on. So, in the easiest case scenario, personalized physical material would exclude the traditional paper ticket. And from that, you can generalize that it would exclude anything that allows the buyer to gain access to the skating that's physical and made for the ticket. This specification is replete with references to swiping a credit card and using data to get in. And it rejects the notion of something physical as a basis to get to the stadium. That's why this invention is new and novel, because never before, never in Gavin, never in Goheen, has someone used just data as a credit card number or any kind of number to gain access to a stadium. That number is not the ticket. That number... So, do you agree that if, for instance, you had a turnstile where you would have to go in and plug in those numbers? Or perhaps, like the school of laundry, you have to put your hand down and it reads your fingerprint. But that would infringe under the judge's construction. The hand might be something physical. We're talking about reading data. So, keying a credit card number into a system by someone, that is data received by the system. So, that would be authentication data. If the person didn't present anything else, that would be in the scope of our interpretation. And within the scope of the district court's interpretation, too. No. No? No. If the district court... Entering a number? How is that... Entering a number... How is that outside the district court's interpretation? If the person entered a number and didn't present anything else, that would just be presented authentication data without anything else. That would be infringing under the district court's construction, right? Yes. It probably would. So, the key is... The phrase is to allow entry into stating without presenting personalized physical material. Now, you can take absurd definitions. Personalized would mean a monogrammed towel. If people were given a monogrammed towel, that is obviously not the intent of the invention. If you look in a dictionary, one of the acceptable definitions of personalized is individualized or customized. There's also e-commerce patents that we cite in there that talk about, on an airline, a personalized meal would be something that meets the needs of the person seeking the meal. If you call the airline, I want a low-salt meal. It's personalized for you in the sense that it meets your needs. So, you take that definition, and then you look at the notice of allowance. The examiner was quite explicit. I mean, he left legislative history, if you will, or specific evidence of his intent as to why he put this language in. And what he talked about is that the person... He said that he was distinguishing Gavin Doheen and that the language was put in to show that something physical that had to be distributed to the buyer was not within the scope of his patent. It doesn't say that. Where does it say that, that it has to be distributed to the buyer? It's on page 20 of our brief, and it says... Well, and you cite 6A680. I have the notice of allowance in the brief that you cited. It says, it says, Gab, when taken individually or in combination with other prior art of record, fails to teach or suggest reassociating authentication data of the paperless tickets from the ticket seller to the ticket buyer. And then he goes on, but he says, without presenting any personalized physical material. I don't... He doesn't say there that the material has to be, had to be something that came from the seller. So, if you look on page 20, it's the same record citation, A680. The paragraph before the section Your Honor was citing says, generally, Gab fails to disclose transferring ownership of an event ticket from a seller to a buyer without having to also physically transfer the ticket to gain access to the event. So, it doesn't matter if it comes from a seller or a third party. The real problem that the invention sought to solve is that the buyer has to wait to get something, whether he's going to get an e-mail with an e-token, he's going to get a FedEx package. He's got to wait under the system here. He doesn't have to wait because he already has his credit card, and that's how he got the ticket. Mr. Morari, you're into your rebuttal time. Do you want to save the rest of it? Yeah, I will. Let's... It was maybe a two-minute of my rebuttal time, which is on the means plus function. I think what we're having there is the district court extended Aristocrat to databases and simply put the algorithm in place. I'm just going to focus on associating and reassociating means. If my patent says, create a record of ticket owner, here's the ticket number, here's the ticket, the name of the holder, the credit card number. If there's a transaction that occurs where the ticket owner's name has changed or their credit card number has changed, the database record is updated. All we're talking about for the algorithm is that you have a record that has a ticket and a buyer's name in it or a buyer's identification, and that record has changed. That's a sufficient algorithm because you're just changing a database record. If it's like the example I gave of the court's table showing who issued an opinion, by putting two bits of information in the same record, you've necessarily associated them together, and nothing more than that is required. Thank you, Mr. Roberts. Mr. Roberts? Thank you. Good morning, Your Honors, and may it please the court, Clem Roberts for the respondent, Pat Gilman. I'd also like to start with the personalized physical material limitation. The court found, we think, correctly that personalized meant bearing or containing information relating to an individual. That makes, I think, very good sense in light of the normal meaning of the word personalized because it reflects that the personalized item relates to a person. Flashy's proposal below, which they get away from in their reply brief, was especially created or adapted to allow access to an event. As the district court noted, there's no concept of an individual or a person in that proposed construction. In their reply brief for the first time on page three, they offer a new construction, which was, quote, custom-tailored to the individual. But I think this court's precedent makes clear that you can't offer new constructions for the first time on appeal, much less for the first time in your reply brief. And even if the court were to disregard that and say, okay, let's consider it, I don't think it helps them. Because a driver's license, a credit card, a student ID, these are all customized to an individual. So is the limiting principle, and I think Judge O'Malley, if I understood her correctly, was getting at this with her question, whether or not the buyer already had it or whether or not it was provided to the seller. I'm asking you what you think their argument is, not what your position is. Yeah, absolutely not. I don't think that makes any sense. So first of all, if you look at Goheen, the – Do you understand that to be their argument? So frankly, Your Honor, I'm not sure I do understand what their argument is. But let's assume that's their argument. Here's why it's wrong. It's wrong, first of all, because in Goheen, there were two types of things at issue. One was an ID card, and Goheen is very clear that it's A563, which is Goheen, column 6, starting at line 46 onward. It calls it an ID card. And what happens in Goheen is, yes, the first time you buy a ticket, you get the ID card. But then thereafter, every time you go and buy a new ticket, they don't need to send you anything else. You just go to the gate and swipe your ID. And Goheen also, if that weren't enough, Goheen also disclosed an alternative embodiment, which was at issue and referenced in the rejections by the examiner, where if you lost the ID, you presented a driver's license. And the driver's license served to validate your identity and let you on. So saying, well, it wasn't provided by a third party wouldn't help them, because at a minimum, you had this driver's license in Goheen that wasn't provided by the ticket seller. And the ID card in Goheen, which is this magnetic stripe card, it was provided the first instance, but it isn't sent every time that you buy a ticket. After it's issued to you, you have it, just like your frequent flyer card. That's the basic idea. Does it matter that the examiner in the notice of allowance explained the examiner's amendment as only for purposes of getting around Geb and did not reference Goheen? No, Your Honor. If you look at specifically the actual interview summary that's particularly before the notice of allowance, it says references discussed, Geb, Goheen. It's very clear leading up to it that both Geb and Goheen were in play. Once they added that limitation, and then he says, okay, now what's the closest prior art of record? I've now distinguished Goheen, and now Geb is the closest prior art of reference, and that's why he's discussing it in the notice of allowance. I would also point out, vis-à-vis the notice of allowance, that the limitation that Mr. Moriarty focuses on, or the part of the notice of allowance, is talking about an earlier limitation. It's talking about the match between Geb and the limitations dealing with the transfer of the ticket, whereas on this appeal we're talking about the amendment to the limitations dealing with how you get access to an event. So, for those two reasons, I don't think that it helps them at all. Again, in addition to sort of just the common sense view of what personalized means, and I don't think there's any way to construe personalized as especially created or adapted to allow access to an event. If you consider, for example, the difference between, let's say, a movie ticket and a driver's license. A movie ticket, you can't tell if I have a movie ticket, whether it's my movie ticket, whether it's your honors movie ticket, whether it's your clerk's movie ticket, because there's nothing about the movie ticket that tells you to whom it belongs. There's nothing personalized about the movie ticket. But a movie ticket is especially created or adapted to allow access to an event. So, in their view, a movie ticket is personalized. A driver's license, on the other hand, the very definition of a personal ID. It has my name, my birth date, my driver's license number, my height, my weight, my hair, my eye color. It's personalized. But it's not especially created or adapted to allow access to an event. So, in their view, a movie ticket is personalized and a driver's license is not personalized. And I would suggest that they have it exactly backwards. The driver's license is personalized. And, indeed, the driver's license was present in the prior art in Goheen and was what they were trying to distinguish. Let me ask you a question about patent prosecution, which you may or may not know the answer to. Suppose you have a situation like this where there's a preferred embodiment and specification. The examiner is here and says, I think that runs up against the prior art. I want you to amend the claim language. Are there ever situations in which an examiner also says you must modify the specification to take out the reference to the preferred embodiment? Or does that simply not happen? I have no awareness of any such case, Your Honor. I've never seen that happen. I can't say it never happens, but I have never seen that.  Again, Your Honor, I'm not familiar with any such – with any law that would require them to do that. No, that's not the question. I apologize. The question is whether it's a matter of – are you familiar with prosecution practice? I'm as familiar with it as most litigators, which is to say not at the level of detail at which the question you're asking. Okay. All right. Thanks. I would say, though, if you look at the prosecution history here, it's very clear what's going on in two things. I don't want to go through the whole history. But first, after Goheen was rejected, the examiner comes to them and he says, quote, the claims as currently recited don't indicate that the authentication data is provided without the use of any man-made tokens or physical material. However, an added limitation to this effect would appear to be allowable over the prior article. That's at A640. Flash seats then amend this claim, but it doesn't amend the limitations dealing with access to a venue. Instead, it changes the word paperless ticket to authentication data in the marketplace section of the claim. That's at A648. There's no change to the granting access. And not surprisingly, the examiner comes back and says, not sufficient. The claims as you've now got them, quote, does not preclude the use of physical forms of authentication data, such as an identification card. He says you haven't done enough. You haven't precluded the use of an identification card. And he says, I'm not even sure that if you did that, your claims would be allowable, because I'm not sure there's sufficient support written description in the specification to support such a claim. Flash seats comes back in its supplemental response of May 14th, which is at A1006, and says, quote, contrary to the examiner's contention, the present application provides support for an access device that accepts authentication data without the use of some sort of physical man-made token, such as a credit card or barcode. So they came back to the examiner and said, Your Honor, don't worry about limiting us in that way. We have support for a system that gets access without using a credit card. So do you agree that if someone went in and just plugged in their credit numbers into a kiosk, that credit card numbers, that that would infringe? Absolutely. That would fall within, you would be providing the authentication data without presenting any personalized physical material. Similarly, a voice biometric. There are a number of things you could think of where you might give over the information without using something like a credit card, a physical man-made material, in order to provide or present that information. That's exactly what the examiner was trying to limit them to. And the examiner, in fact, immediately after the supplemental response, they have the discussion, which is 8673, where both Gebb and Goheen are listed as the things that they're discussed. And then the examiner, right thereafter, adds this express negative limitation, saying we're going to exclude personalized physical materials from the scope of the claim. Now, they've made this argument in their briefs that this is sort of the most preferred embodiment. It's not. It's just a preferred embodiment. As I mentioned, they go to the examiner and they tell the examiner we have support within the description of the preferred embodiment that we can support things where you don't use a credit card to get in. And the examiner then gives them those claims. The other argument that I've heard here today is this argument about low salt, customized. And again, I would submit that it doesn't help them. First of all, it wasn't what they urged below and is therefore waived. But even if it does, if their argument is, well, your honors, personalized shouldn't be restricted to something that bears or contains information specific to a person. It also includes things that reflect your interests, like a low salt meal reflects something you're interested in. Fine. But then you're broadening the scope of the exclusion. And in a case whereas here we were granted summary judgment of non-infringement, broadening the exclusion and narrowing the claims can't just as a pure matter of logic overturn a judgment of non-infringement. If I could, your honor, I would turn to the means plus function unless there are further questions on this element. On the means plus function, first, the court doesn't need to reach this issue if it upholds the district court's order on non-infringement. This is really only relevant, I think, if the court is going to overturn the summary judgment of non-infringement and send it back, at which point we then need to know whether or not these claims, claims one through five, are in play or not. Are you saying it was only asserted as a defense and not as a counterclaim? It was asserted as a counterclaim, your honor, but the counterclaims have been dismissed without prejudice and subject to whether the case is coming back. So, for example, if the court just finds that there's no infringement and upholds that, the case is done and it would be an advisory opinion at that point, I think, because the case is not coming back to life, because the counterclaims have been dismissed without prejudice. So you're saying that here we only have them then in the context of a defense? Correct, your honor, essentially, yes. Okay. So the issue below was what they proffered as the sole corresponding structure, I will read it to you, for the claims found in that was, quote, a manifestation of logic such as software, for example, and not limited to a programming language, or a data structure, for example, and not limited to a database server, a database, a data table, a data record, or a data field. That's A1414-31. That's what they said it was. That is not an adequate corresponding structure under any case of this court that I'm aware of. It isn't even a structure. It's a manifestation of logic, for example, and not limited to a programming language. A language is a set of semantic concepts. It's not a structure. And then they go on and say, or a data structure, for example, and not limited to a database server. Well, you can't find a corresponding structure by saying the corresponding structure for this thing, for this means element is a structure, right? You can't just say, oh, it's a structure, and then whatever is included within the data structure happens to satisfy it. That was the only thing they advocated below, and now they're coming up with various additional things they want to point to in its stead, and I think those are all waived. You know, they also argued in their brief that they didn't propose this as a corresponding structure, but if you look at A267 through 268, I think it says, I will read. This is from their claim construction brief. Quote, this is A267. Quote, the corresponding structure disclosed in the specification is a manifestation of logic such as software, for example, and not limited to a programming language or a data structure. And then it says a corresponding structure can include, for example, a computer running UNIX, Windows NT, Job, or Spark, and having Oracle, Infomex, Sybase, or SQL, or server database, or the like. So they said the corresponding structure is a manifestation of logic, and then they said it can include all of these various other different computers. What they're now saying is, well, we said it could include all those various other computers, so those other computers are the corresponding structure. That's not what they said below, and moreover, I don't think those computers help them. They rely very heavily on this court's decision in Katz, and in Katz the court found that where you have a very basic computer function such as storing or retrieving- I appreciate that. Let me just go back before your time runs out to the first point you made on the means-less function claim, because I guess it sounds quite unusual to me that you dismiss the counterclaims without prejudice. I mean, the judge granted a motion for summary judgment, right? Yes, he did. Saying that the claims are indefinite. Yes, Your Honor. So he acted upon your counterpoint, right? Well, it isn't very clear whether he was acting on the counterclaim or on the affirmative defense, but I agree with you. He did, in fact, find the claims were indefinite, yes. So if it's been dismissed, then this issue is not appropriately before us. You want us to reach this issue if we reverse on infringement. So I don't know how you can have it both ways. Either the issue is clearly before us and it's a live issue, or it's not. I understand, Your Honor. I guess what I'm saying is that from the court's perspective, I think it is fairly before you. From the court's perspective, it's especially important if you're overturning the judgment of non-infringement. Yeah, but we don't make decisions about what we're going to rule on us to whether or not it's especially important or just important. So that doesn't really help me much. Absolutely, Your Honor. I apologize. But I do think just from a practical perspective, if the judgment on non-infringement is upheld, the case is not going forward, that's going to resolve the issues between the parties. But I agree as a matter of law, it is appropriately before you and subject to court's purview. Thank you, Mr. Miller. Thank you. Do I still have five minutes? I think I did. No, you have one minute and 11 seconds. Oh, boy. All right. Then I want to get to this point. If you look at page 8 of our brief where we set forth the claim limitation, one exercise that's helpful for courts to construe claims is to engage in grammar. You can move the parts around a little bit that have the same sense. So let me just suggest that to you. If you look at claims, this is the wherein clause. As we take this top of the phrase, to allow access, and we move it to the bottom, it would have the same meaning. And the phrase would say, without the buyer presenting any personalized physical material to allow access to the venue. So personalized is a verb, and personalized can mean individualized or meet the needs of the person. And that's where you get it from. It's not personalized in the abstract. It's personalized to allow access. On the 112 issue, obviously it's a live issue. The district court ruled that our means plus function claims are invalid. So we can't use them for any purpose ever again unless this court were to reverse that. It's not an advisory opinion in any way, shape, or form. But if it's only presented as a defense, our case law says that we don't get invalidity if we find non-infringement. If it's only as a defense. Then it would have to be vacated because we can't use it in the future. But the issues before you, we'd like to decide it because we don't want to wait another four years to litigate the issue should we do that again. The issue of waiver. Just one final thought. You're out of time. There was no waiver. The district court in page 24 recognized our argument of his opinion as well as record sites of 1667, 170, 1029 to 1025, 267 to 270, 436 to 440. All of these issues that they say were waived are well vetted in our expert declarations, our oral argument with the court. And just one last question. No, I think that's enough. Thank you, Mr. Roberts. Thank you, Mr. Roberts. Thank both counsel. The case is submitted.